IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| CHARLES SCOTT LOFTIS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-13-910-R |
| THOMAS CARL DUROY, in his Individual capacity, | ) | |
| Defendant. | ) | |

## ORDER

This matter comes before the Court on cross-motions for summary judgment. (Doc. Nos. 60 and 75).[1] The Court has considered the parties' submissions and finds as follows.

This case arises out of events in November 2011, in Kay County, Oklahoma. At the time Plaintiff Loftis, an attorney, was representing a criminal defendant, Terome Porter, on a state murder charge. Kayla Woods, a friend of Mr. Porter, contacted Mr. Loftis for purposes of passing along certain envelopes to Mr. Porter, who was being held in the Kay County Detention Center. On November 23, 2011, in the late afternoon, Kayla Woods brought three envelopes to Plaintiff's office. She had received the envelopes from a woman whose identity she did not know, but who was known to Terome Porter. When Kayla Woods left the envelopes with Mr. Loftis, he noticed white powder falling from one envelope and that the envelopes smelled of marijuana. He contacted Gale McArthur, who practiced law from the same office at that time, about what to do with the envelopes. The

---

[1] The Court notes that Plaintiff's Reply in support of his motion fails to comply with Local Civil Rule 7.1(i), in that it is more than double the allotted ten pages without seeking leave of Court.

two opened the envelopes, believing they contained drugs, and discovered what they believed were tobacco leaves, marijuana, and a white powder. Thereafter they contacted the police, including the District Attorney and a District Judge. In February 2012, Defendant Duroy began investigating the introduction of contraband into the Kay County Detention Center. To that end, he executed an affidavit in support of a search warrant to search the contents of Plaintiff's cell phone. This affidavit forms the basis of this litigation. Plaintiff contends that the February 28, 2012 affidavit of Defendant Duroy in support of the search warrant for his telephone violated his rights under the Fourth and Fourteenth Amendments, because it contained materially false or misleading statements or omissions. Both Plaintiff and Defendant seek summary judgment, Defendant in part, because he contends he is entitled to qualified immunity.

Summary judgment is warranted under Federal Rule of Civil Procedure 56(c) when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir.1994). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir.2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir.2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen*

2

*v. Muskogee*, 119 F.3d 837, 839 (10th Cir.1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

As noted, Defendant Duroy contends he is entitled to qualified immunity from civil damages. In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818. The issue of qualified immunity is ordinarily a matter of law for decision by the judge. *See id*.; *Maestas v. Lujan*, 351 F.3d 1001, 1007–08 (10th Cir.2003) (noting that while qualified immunity is normally a question of law, in exceptional circumstances, a jury may be called on to determine disputed historical facts intertwined with the inquiry of whether a reasonable person in the defendant's position would have known their conduct violated the law).

Generally, once the Defendant asserts qualified immunity as a defense, the burden shifts to Plaintiff to "show with particularity facts and law establishing the inference that defendant violated a constitutional right" and that the right allegedly violated was "clearly established at the time of the conduct at issue." *Hollingsworth v. Hill*, 110 F.3d 733, 737–38 (10th Cir.1997); *Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir.1991) ("plaintiff must produce facts sufficient to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred"). The Supreme Court permits the lower courts "to exercise their sound discretion in deciding

which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009). Because the issue of whether Plaintiff sufficiently alleges violation of clearly established law is easily addressed, the Court will consider the second prong before considering whether Plaintiff has sufficiently alleged a constitutional violation by Defendant Duroy.

A search warrant may issue upon a showing of probable cause that contraband or evidence is located in the particular place to be searched. U.S. Const. amend. IV ("no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized"); *see also United States v. Ventresca*, 380 U.S. 102, 107 (1965); *Illinois v. Gates*, 462 U.S. 213, 230 (1983). Probable cause is defined as "a reasonable ground for belief of guilt ... [which] means less than evidence which would justify condemnation or conviction [.]" *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (internal quotations and citations omitted). Probable cause to search or seize exists when, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Inherent in this language is "the obvious assumption [ ] that there will be a truthful showing" of facts to support probable cause, meaning that "the information put forth is believed or appropriately accepted by the affiant as true." *Franks v. Delaware*, 438 U.S. 154, 164-65, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (quotation omitted). Under *Franks*, the Court presumes that the affidavit supporting a search warrant is valid. *Franks*, 438 U.S. at

4

171–72, 98 S.Ct. 2674. An affiant seeking a search warrant may not knowingly or recklessly include false statements in an affidavit, or omit from it information which would vitiate probable cause. *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015). If an affiant does so, the Court measures "probable cause by (1) removing any false information from the affidavit, (2) including any omitted material information, and then (3) inquiring whether the modified affidavit establishes probable cause for the warrant." *Id.* Where there are no genuine issues of material fact, a court may make the probable cause determination as a matter of law. *Bruner v. Baker*, 506 F.3d 1021, 1028 (10th Cir. 2007). Accordingly, since *Franks v. Delaware*, 438 U.S. 154 (1978), it has been clearly established law that a search or arrest warrant is void if issued on the basis of an affidavit that includes a false statement made knowingly and intentionally or with reckless disregard for the truth and the statement is necessary for a finding of probable cause.

Plaintiff contends there was no probable cause to support the search warrant because Tom Duroy's affidavit in support of the warrant was replete with material misrepresentations and omissions. By affidavit dated February 28, 2012, Defendant sought permission to search an Apple i-phone 4 having the phone number 580-716-5599 that was in the possession of Charles Scott Loftis. The affidavit stated:

> Your affiant, Detective Tom Duroy, is employed by the Ponca City Police Department and has been so employed since September of 1992. Your affiant is a commissioned police officer in the State of Oklahoma.
> On 11/30/2011, a Samsung cellular phone was discovered on the person of Terome Porter, an inmate serving time on a felony Conviction in the Kay County Detention Facility, by jail staff. This contraband cell phone was turned over to Kay County District Attorney Investigator Kyle Hartwig on January 10, 2012 by Harold Hughs, Deputy Director of the Kay County Detention Facility. Hartwig discovered on the account history of this

5

contraband phone that there were over 120 communications, both calls and text messages, to and from phone number 580-716-5599, the cellular phone number of Charles Scott Loftis. These communications began on October 28, 2011, and ended on November 29, 2011, the day before the contraband phone was discovered. Charles Scott Loftis was the Attorney of record, representing Terome Porter at that time.

On 11/23/2011, at approximately 4:50 pm, defendant Kayla Dawn Woods delivered three envelopes to the office of Charles Scott Loftis. Loftis told Officer Dana Wilson that Woods handed these envelopes directly to him and said "can you give these to Terome?" Also present at Loftis's office at the time of this delivery was his part time secretary Myra Deibler. Loftis reported to Ponce City Police Office Dana Wilson that he became concerned about the contents of the envelopes when he noticed a white powder like substance leaking from one of the envelopes. Loftis told Officer Wilson that he called in his law partner Gale McArthur to look at the envelopes. McArthur told Loftis that the envelopes smelled like marijuana. Loftis then told Officer Wilson that he and McArthur opened the envelopes and discovered loose tobacco and what appeared to be marijuana. At this time Loftis called District Attorney Brian Hermanson and Judge Phillip Ross.

On 2/27/2012 at approximately 1400 hours, Investigator Hartwig and I conducted an interview with Kayla Dawn Woods. Woods told us that she received a call from inmate Terome Porter telling her that a package was going to be delivered to her. This package contained pictures and papers that couldn't be delivered to him through jail security, but could be delivered to him by his attorney Scott Loftis. Porter directed Woods to contact Loftis and make arrangements with him for her to deliver the package to Loftis so that he could deliver it to Porter. Woods told us that she contacted Loftis on his cell phone and was told to bring the package to his office at 4:00 pm. Woods told us that she delivered the package to Loftis at his office at approximately 4:50 pm.

Woods told us that she had previously delivered a package to Loftis at his office for the purpose of having Loftis deliver it to Porter in the jail. Woods told us that the first delivery occurred approximately two to three weeks prior to the delivery of 11/23/2011 and it was handled in the same exact way. Woods told us that the first delivery consisted of one envelope that was just like the three envelopes of the 11/23/2011 delivery. She described all of these envelopes as white envelopes approximately ½ inch to 1 inch thick. Woods told us that she believed that all the envelopes contained marijuana. When asked why she believed this, she told us that she knew what marijuana smelled like and all these envelopes smelled of marijuana. Woods also told us that she knows the first package was delivered to Terome Porter in jail because he called her and told her he had received the package.

Woods gave your affiant permission to access and view her cellular

6

phone history. She told us that her cell phone number was 580-382-1729. I viewed this history and observed numerous calls and texts to and from Woods phone, Porter's contraband phone, and Loftis's cell phone. On 11/23/2011, these communications occurred prior to the delivery of the envelopes to Loftis, and after the delivery. I examined the phone history of Porter's contraband phone. On 11/23/2011, there were several communications between Porter's contraband phone, Woods' phone, and Loftis's phone. These communications occurred before and after the delivery of the envelopes to Loftis at his office.

    Your affiant believes that the cellular phone with phone number 580-716-5599, belonging to Charles Scott Loftis contains evidence of the crimes Conspiracy to commit a felony and Introduction of contraband into the Kay County Detention Facility.

Plaintiff alleges the following deficiencies with Detective Duroy's affidavit:

1. The affidavit references the interview with Kayla Woods by Ponca City Police Officer Dana Wilson, but fails to note that she responded in the negative when asked by Wilson if Scott Loftis has anything to do with knowingly taking drugs to Terome Porter.

2. The affidavit omitted the date upon which the cell phone was smuggled into the prison, on or about October 24, 2011.

3. The affidavit failed to state that the Kay County Detention Facility visitation logs from October 24, 2011, did not include a visit by Mr. Loftis to Terome Porter.

4. The affidavit excluded Ms. Woods' repeated denial that there were drugs in the envelopes she delivered to Mr. Loftis on November 23, 2011.

5. The affidavit omitted that Ms. Woods told Detective Duroy that no one told her there were drugs in the envelopes.

6. The affidavit omitted Ms. Woods' statement that Terome Porter did not tell her drugs were going to be in the package she was receiving.

7. The affidavit misrepresents that Ms. Woods indicated that the envelope she had

7

previously delivered to Mr. Loftis for Mr. Porter smelled like marijuana.

8. The affidavit omits that Ms. Woods described the first envelope delivered as simply being a white envelope.

9. With regard to the number of telephone calls between Mr. Loftis and the contraband telephone found in Mr. Terome Porter's possession, the affidavit failed to include Ms. Woods' statement that Terome Porter would identify himself as "Jerome" his twin brother, when calling Mr. Loftis.

10. The affidavit fails to indicate that Ms. Woods twice informed Detective Duroy and Kyle Hartwig that she did not know how Terome Porter obtained the contraband cell phone in the detention facility.

11. Detective Duroy omitted from the affidavit the fact that during the February 27, 2012 interview, Kayla Woods stated that she did not know if Mr. Loftis was known for delivering items to the jail, and that she had never heard that before.

Most of Plaintiff's complaints regarding the affidavit involve alleged material omissions; the sole alleged misrepresentation in the affidavit is with regard to Kayla Woods' alleged statement that envelopes on both deliveries she made to Plaintiff smelled like marijuana. "Woods told us that she believed that all the envelopes contained marijuana. When asked why she believed this, she told us that she knew what marijuana smelled like and all these envelopes smelled of marijuana." Plaintiff contends this was false, given the statements made by Kayla Woods in her February 27, 2012 recorded statement, at which time she was asked "and was the other time that you made a delivery to Loftis to go to Terome the same?" "I mean, no. I didn't smell anything in that one." Doc. No. 75-2, p. 13.

She denied smelling the envelope, but was asked:

> Q. You knew what is was. It was dope too, right, the first time.
> A. I'm pretty sure.

*Id.* at p. 41

> Q: You suspected that's what it was [marijuana]?
> A. Yeah.

*Id.* at p. 42. The Court finds that this misstatement was not material. Kayla Woods admitted to Defendant and Kyle Hartwig during the February 27, 2012 interview that she was "was pretty sure" the first envelope contained marijuana and that although Terome Porter told her the envelope contained pictures, it was apparent its contents were not photographs.[2] As such, the Court cannot say the language of the affidavit contained a material misstatement. Furthermore, the Court finds that probable cause would still exist if the affidavit did not include the statement that the first envelope delivered by Woods to Loftis did not smell of marijuana.

The Court next turns to Plaintiff's contention that Defendant Duroy's affidavit contained material omissions, that is information that had it been included in the affidavit in support of the search warrant would have vitiated probable cause. A number of Plaintiff's allegations revolve around denials made by Kayla Woods during the February 27, 2012 interview. Specifically, Mr. Loftis contends Defendant Duroy should have included in the affidavit that: (1) Kayla Woods told Officer Dana Wilson in November 2011 that Scott Loftis had nothing to do with taking drugs to Terome Porter; (2) she denied

---

[2] In support of his position, Plaintiff cites to a June 5, 2013 affidavit wherein Kayla Woods stated that the first envelope contained a letter she had written. She made no such representation in her February 27, 2012 recorded statement with Defendant and Kyle Hartwig.

9

knowing there were drugs in the envelopes or that she had been told there were drugs by Terome Porter or anyone else; (3) Kayla Woods did not know how Terome got the phone while in the detention center; and (4) she was unaware of any reputation by Plaintiff for delivering items to the detention center.

Plaintiff identifies two alleged material omissions involving the date the cell phone was allegedly smuggled into the prison. He contends the affidavit should have indicated October 24, 2011 was the date the phone was introduced into the center. Standing alone, omission of this date seems irrelevant. He asserts, however, that the jail logs for that date did not indicate a visit by Mr. Loftis to his client. Although Plaintiff identifies these as separate omissions, neither standing alone is of any significance and thus the Court will consider them together.

Plaintiff further contends the affidavit was deficient because it omitted information conveyed by Kayla Woods during the February 27, 2012 interview regarding the identity of the person using the contraband phone. That is, although there were more than one hundred communications between the contraband phone and the cell phone that was the subject of the warrant, according to Kayla Wood's Mr. Loftis was told he was speaking to Jerome Porter, Terome Porter's twin brother. Plaintiff contends the affidavit in support of the search warrant should have included the information regarding the alleged identity of the person using the contraband cellular phone.

Finally, Plaintiff contends the affidavit omitted material information regarding Kayla Wood's description of the envelope she delivered to Plaintiff two to three weeks before the November 23, 2011 envelope, because she described that first envelope as

10

simply a white envelope.

> Q. And what was the package the first time?
> A: It was just an envelope.
> Q: What color was it?
> A: White.
> Q: Was it bulky? Was it regular size? What was it? Was it a bulky envelope?
> A: It was just like the other ones.
> Q: Just exactly like the other ones?
> A: Yeah.

Doc. No. 75-2, p. 25.

The Court finds that none of these omissions was material to the issuance of the search warrant, and including one or all of these pieces of information would not have vitiated probable cause. The crime of bringing contraband into a jail requires proof that without authority a person brought a controlled substance, tobacco, or a cellular phone into a jail or place where prisoners are located. Okla Stat. tit. 57 § 21(A) (D) and (E). The nature of the contraband determines which subsection of Okla. Stat. tit. 57 § 21 is at issue. The information Plaintiff contends was improperly omitted from the warrant would not have eliminated probable cause, because those facts do not make it less likely that the telephone with number 580-716-5599 would have evidence of a crime. Probable cause was supported by the number of calls between the confiscated contraband cell phone and Plaintiff's phone and the timing thereof relative to Ms. Woods' delivery of drugs to Mr. Loftis. Including the information about what information Ms. Woods denied would not have removed the fact that there were in excess of 120 communications between the cellular telephone confiscated at the Kay County Detention Center and Plaintiff's telephone, or the timing of

the calls.[3]

With regard to the date when the telephone was believed to have been smuggled into the facility and the visitor's logs, the telephone was not used to contact Mr. Loftis' phone until October 28, 2011, and Plaintiff utters no concerns about jail logs other than October 24, 2011. That it was believed that the phone was smuggled in on October 24, 2011, a date when the logs reflect no visit by Mr. Loftis does not render it less likely that there would be evidence on his phone of the crime, without regard to who was the suspect in the smuggling. Accordingly, the absence of a record of attorney visits on that date would not have vitiated probable cause. The same holds true with regard to whom Mr. Loftis believed he was speaking, whether it was his client, Terome Porter or Terome's twin brother Jerome. Finally, the Court is unable to discern how, given the information provided by Kayla Woods that the first envelope she delivered to Scott Loftis was identical to the three envelopes she delivered on November 23, 2011, that the omission of the description of the envelope as a plain white envelope was a material omission, such the inclusion of the information in the affidavit would have vitiated probable cause. Having considered the alleged misrepresentation and each of the alleged omissions, the Court concludes that Plaintiff has failed to establish that the search warrant was not valid because Defendant's

---

[3] In his Reply Plaintiff goes to great lengths to insult Defendant, by example stating "Defendant, out of his own stupidity and ignorance of the law, has claimed for five (5) years now that it is illegal for an individual to communicate with an inmate who has a cell phone in a county jail, but there is no criminal violation committed by the individual who is not the inmate in the county jail." It is entirely logical to conclude that a cell phone in communication with a contraband cell phone likely contains evidence of the crime of smuggling the phone into the jail, which is what the warrant sought. The warrant did not specifically identify Plaintiff as a suspect; rather it identified his cellular telephone as one that had numerous contacts with the contraband phone. Regardless, the tenor and tone of Plaintiff's brief is unnecessary. His frustration at the situation is understandable; however, his tenor of ridicule is unnecessary.

affidavit contained material misrepresentations or omissions that were necessary to the finding of probable cause.

Furthermore, even if Plaintiff had presented evidence that there were material misstatements or omissions in the search warrant affidavit, Plaintiff makes no attempt to establish any intent on the part of Defendant Duroy. In *Franks*, the Supreme Court did not define "reckless disregard for the truth." However, the Tenth Circuit has indicated that "reckless disregard for the truth" occurs when "the affiant in fact entertained serious doubts as to the truth of his allegations." *Bruning v. Pixler*, 949 F.2d 352, 357 (10th Cir.1991) (internal citations omitted); *accord United States v. Clapp*, 46 F.3d 795, 800 (8th Cir.1995) ("Courts, including our own, that have attempted to define reckless disregard for the truth have looked to what the affiant, 'believed or appropriately accepted' as true"). In addition, "[r]ecklessness may be inferred from the omission of facts which are clearly critical" to the findings of the issuing judge. *Bruning*, 949 F.2d at 357. This is not, for example, a case where a critical witness recanted accusations but the recantation is not included in the affidavit or the description given by an eyewitness is contrary to the physical characteristics of the person arrested for perpetrating the crime. *See Stewart v. Donges,* 915 F.2d 572, (10th Cir. 1990); *Golino v. City of New Haven*, 950 F.2d 864, 871 (2d Cir. 1991).

For the reasons set forth above, the Court finds that Defendant is entitled to summary judgment on the basis of qualified immunity, because Plaintiff has failed to establish that Defendant sought a search warrant by including in the affidavit knowingly or recklessly false statements in an affidavit or by omitting therefrom information that would vitiate probable cause. Accordingly, Plaintiff's Motion for Partial Summary

Judgment (Doc. No. 60) is hereby DENIED, Defendant's Motion for Summary Judgment (Doc. No. 75) is GRANTED.

IT IS SO ORDERED this 3rd day of November, 2017.

*David L. Russell*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE